UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C.<br>and NAGRASTAR LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>ONE BOX TV, LLC<br>and DONNA FOGLE,<br><br>  Defendants. | Case No. 8:19-cv-2147-T-30SPF |

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiffs DISH Network L.L.C. and NagraStar LLC move for default judgment against Defendants One Box TV, LLC and Donna Fogle on Counts I and II of the complaint alleging violations of 47 U.S.C. §§ 605(a) and 605(e)(4).

## I.   FACTUAL BACKGROUND

Plaintiff DISH is the fourth largest pay-television provider in the United States and serves millions of fee-paying subscribers nationwide by delivering television programming to their homes or businesses using its direct broadcast satellite system and security technology provided by co-plaintiff NagraStar (the "DISH Programming"). (Dkt. 1, Pls.' Compl. ¶¶ 1, 10-12.)

Defendant Fogle, through her company Defendant One Box TV, LLC, operated an illicit streaming service known as OneBox, whereby DISH Programming acquired from DISH's satellite communications was retransmitted, without authorization, to customers that purchased a code to access that OneBox service from Defendants (the "Rebroadcasting Scheme"). (*Id.* ¶¶ 1, 5-6, 13-14.) The codes were designed and produced for the purpose of enabling Defendants' customers to use their set-top box or other internet-enabled device to access the servers that retransmitted DISH

1

Programming on the OneBox service ("Device Codes"). (*Id.* ¶ 14.) Defendants sold these Device Codes on their websites and at their storefront, as standalone products and loaded on a set-top box. (*Id.* ¶¶ 14-15.) Defendants marketed their OneBox service as means to "Reduce [the] Cable TV bill" while continuing to receive premium content such as DISH Programming. (*Id.* ¶ 16.)

Defendants did not respond to Plaintiffs' complaint despite being properly served, and thus the Clerk entered their defaults. (Dkt. 7-11.) Default judgment is now appropriate.

## II.     ARGUMENT

**A.     Plaintiffs Should Be Awarded A Default Judgment Against Defendants.**

Default judgment may be entered against Defendants because they failed to plead or defend the action, the Clerk entered their defaults, and Defendants are not minors, incompetent, or exempt under the Servicemembers' Civil Relief Act. *See* Fed. R. Civ. P. 55(b)(2). (Declaration of Kevin McMonnies ¶¶ 3-5, Exs. 1-3.) Default judgment is appropriate if the well-pleaded allegations of fact in the complaint, which are accepted as true because of Defendants' default, state a plausible claim for relief. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).[1]

Plaintiffs properly plead Defendants' violations of 47 U.S.C. § 605(a) (Count I). Section 605(a) provides that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a) (quoting third sentence). DISH's satellite broadcasts of television programming intended for its fee-paying subscribers are "communications by radio" subject to the protections of section

---

[1] The Court has personal jurisdiction under Rule 4(k)(1)(A) because Defendant Fogle resides in Florida and Defendant One Box TV, LLC is a Florida entity with its principal place of business in Florida. (Compl. ¶¶ 4-5; Dkt. 7-8.)

2

605(a).  (Compl. ¶¶ 10-12.)  *See DISH Network L.L.C. v. Ward*, No. 8:08-cv-590-T-30TBM, 2008 WL 4327029, at *2 (M.D. Fla. Sept. 18, 2008) (Moody, J.) ("Dish's satellite transmissions do fall [within] the scope of § 605(a) of the Communications Act.") (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 848 (11th Cir. 1990)).

Defendants violated section 605(a) through their operation of the Rebroadcasting Scheme. Defendants retransmitted DISH Programming originating from DISH's satellite communications to customers of their OneBox service or worked closely with others to do so.  (Compl. ¶¶ 1, 13, 17 [including statements placed on Defendants' websites evidencing their control over the channels].) Defendants also sold the Device Codes required to access that DISH Programming on the OneBox service.  (*Id.* ¶¶ 14-15.)  Defendants' actions assisted OneBox users to receive DISH Programming without authorization, which benefitted Defendants in the form of Device Code revenues and also benefitted their customers by allowing them to avoid paying the required subscription fee to DISH. (*Id.* ¶¶ 19-20.)  Defendants therefore violated section 605(a), as pleaded in Count I.  (*Id.*)

Defendants' sale of Device Codes also violates section 605(e)(4) (Count II), which makes it unlawful to distribute "any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of … direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)."  The Device Codes, which Defendants sold individually and pre-loaded onto a set-top box, were designed and produced for purposes of allowing access to the servers that support the OneBox service and therefore constitute a "device" or "equipment" within the scope of section 605(e)(4).  (Compl. ¶ 14).  *See DISH Network L.L.C. v. Ward*, No. 8:08-cv-590-T-30TBM, 2010 WL 11507693, at *6 (M.D. Fla. Jan. 8, 2010) (Moody, J.) (identifying plain meaning of "device" and "equipment" as "things" having a particular purpose, and concluding that software is a device

or equipment under section 605(e)(4)); *DISH Network L.L.C. v. Ramirez*, No. 15-cv-04712-BLF, 2016 WL 3092184, at *3-4 (N.D. Cal. June 2, 2016) (applying section 605(e)(4) to piracy-enabling passcodes).  Defendants violated section 605(e)(4) because the Device Codes that they distributed to their customers are intended for use in activity prohibited by section 605(a) – receiving DISH Programming without authorization and proper payment to DISH.  (Compl. ¶ 24; *see also* ¶¶ 16-17 [Defendants' statements marketing their OneBox service as an alternative to pay-television].)

Thus, Plaintiffs sufficiently plead Defendants' violations of sections 605(a) and 605(e)(4). *See DISH Network L.L.C. v. Droid Tech. LLC*, No. 8:19-cv-672-WFJ-AEP, Dkt. 7, 21 (M.D. Fla.) (granting TRO and preliminary injunction and finding that Plaintiffs had a likelihood of success on section 605(a) and (e)(4) claims based on similar scheme to retransmit DISH programming and profit from the sale of codes used to access streaming services carrying that DISH programming); *DISH Network L.L.C. v. SET Broadcast LLC*, No. 8:18-cv-01334-VMC-AAS, Dkt. 15, 63 (M.D. Fla.) (same) (attached to McMonnies Declaration as Exs. 16-17).

Defendant Fogle is individually liable due to her personal participation in the violations of section 605, and because of her ability to supervise and financial interest in that activity as shown by her ownership and control of Defendant One Box TV, LLC.  (Compl. ¶¶ 5-6; McMonnies Decl. ¶¶ 5, 8-14.)  *See S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) ("An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement."); *Joe Hand Promotions, Inc. v. Creative Entm't, LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013) (finding similar standard applies in the context of section 605 claim).

**B.      Plaintiffs Should Be Awarded Statutory Damages Against Defendants.**

Damages may be determined at the default judgment stage without conducting a hearing provided that "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 948 (11th Cir. 2017) (quoting *Adolph Coors Co. v. Movement Against Racism & The Klan,* 777 F.2d 1538, 1543 (11th Cir. 1985)).  Statutory damages for Defendants' violations of section 605(a) are properly awarded in the amount of $1,000 to $110,000 for each violation, and from $10,000 and $100,000 for each of Defendants' violations of section 605(e)(4).  47 U.S.C. § 605(e)(3)(C)(i)(II), (ii).  Such damages are capable of mathematical calculation and therefore a hearing is not required.  *See Urquidi*, 712 F. App'x at 948 (holding district court did not err in not holding a damages hearing because "[t]he statutory damages chosen by the judge were an ascertainable value per violation, simply multiplied by the number of violations").

Plaintiffs request statutory damages of $1,000 for each of Defendants' violations of section 605(e)(4) – which is significantly below the $10,000 to $100,000 per violation range authorized by the statute.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).  Each Device Code distributed by Defendants constitutes a separate violation of section 605(e)(4).  *See id.* § 605(e)(4) ("[T]he prohibited activity established herein as it applies to each such device shall be deemed a separate violation."); *DISH Network L.L.C. v. Whitehead*, No. 3:09-cv-532-J-32JRK, 2011 WL 6181732, at *5 (M.D. Fla. Dec. 13, 2011) ("Section 605(e)(4) is violated by each distribution of a piracy device."); *see also DISH Network L.L.C. v. Sonicview USA, Inc.*, No. 09-cv-1553-L(WVG), 2012 WL 1965279, at *13 (S.D. Cal. May 31, 2012) (same).

Plaintiffs were granted leave to conduct discovery from Defendants' payment processors and financial institutions for purposes of identifying the number of Device Codes that Defendants


distributed and in turn calculating Plaintiffs' statutory damages.  (Dkt. 13.)  The records produced in response to Plaintiffs' subpoenas show that Defendants sold at least 3,805 Device Codes.  (*See* McMonnies Decl. ¶¶ 8-13, Exs. 6-13.)  Therefore, Plaintiffs should be awarded statutory damages of $3,805,000 (3,805 x $1,000), jointly and severally against Defendants.

Plaintiffs' requested damages are reasonable and conservative for several reasons.  *First*, the number of Device Codes attributed to Defendants is based upon records obtained from PayPal, Authorize.net, Stripe, Square, PayArc, and American Bancard, each of which Defendants used to process payments received from their sale of Device Codes.  (*Id.*)  Defendants, however, used at least one additional merchant payment processor for this purpose, which was identified from bulk deposits to their Wells Fargo bank accounts totaling approximately $440,000.  (*Id.* ¶ 14.)  Plaintiffs are unaware how many individual Device Code sales contributed to this amount and thus excluded these sales from its statutory damages calculation (but because Device Codes cost as little as $19, the number of Device Codes sold using this merchant account is likely substantial).  (*Id.* ¶ 15.)

*Second*, even with respect to the merchant processing accounts that were identified, not all transactions reflected in those account records are included in Plaintiffs' request for damages.  (*Id.* ¶¶ 8-13, Exs. 6-13.)  Plaintiffs only included transactions referencing Device Codes or transactions in the amount of $19, $27, $35, or $39, which correspond with prices of the Device Codes offered on Oneboxlive.com.  (*Id.*)  Defendants received a number of other payments that Plaintiffs did not consider when calculating the number of Device Codes sold, but which likely represented the sale of additional Device Codes – given that these payments were processed using the same merchant accounts.  (*Id.*)  The variance in dollar amounts may be attributable to several factors, such as the purchase of set-top boxes combined with Device Codes or multiple Device Codes, either of which would have a cost in excess of the $19 to $39 transactions considered by Plaintiffs.  If Defendants

had participated in this action and been subject to discovery concerning these payments received, rather than default, more extensive violations of section 605(e)(4) may have been established.

*Third*, the $1,000 per violation requested by Plaintiffs is substantially less than the statutory maximum of $100,000 per violation, and even below the $10,000 statutory *minimum* for violations of section 605(e)(4). *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Enhanced statutory damages, while not requested, are appropriate in this case given the willfulness of Defendants' misconduct. (Compl. ¶¶ 16-17, 25; *see* Declaration of Nick Sayeedi ¶¶ 3-4, Ex. 1-2 [evidencing that Defendants forged Plaintiff DISH's signature on a made-up licensing agreement to give others the false impression that Defendants were authorized to offer DISH Programming when in fact Defendants were not]).[2]

*Finally*, Plaintiffs are not requesting attorneys' fees or costs, which must be awarded to an aggrieved party that prevails on its claim under section 605(e)(4) such as Plaintiffs. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Accordingly, additional monetary relief is available to Plaintiffs but such relief is not being requested in the default judgment.

Awarding Plaintiffs $3,805,000 in statutory damages is reasonable in this case.

**C.     Plaintiffs Should Be Awarded A Permanent Injunction Against Defendants.**

Plaintiffs establish the requirements for a permanent injunction: "(1) … irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction."

---

[2]Other courts have awarded statutory damages within this range for each violation of section 605(e)(4) when entering default judgment in analogous cases. *See DISH Network L.L.C. v. Dillion*, No. 3:12-cv-00157-CAB-KSC, Dkt. 47 at 6:18-23 (S.D. Cal. Oct. 15, 2012) ($100,000 per violation, for a total award of $12 million); *DISH Network L.L.C. v. Whitcomb*, No. 3:11-cv-0333 W (RBB), Dkt. 17 at 5:9-23 (S.D. Cal. July 18, 2011) ($10,000 per violation, for a total award of $14.4 million) (attached to McMonnies Declaration. as Exs. 18-19.)

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

        1.        **Plaintiffs Are Irreparably Harmed And Have No Adequate Remedy At Law.**

"[T]he loss of customers and goodwill is an irreparable injury." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (quoting *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)); *Ferrellgas Partners, L.P. v. Barrow,* 143 F. App'x 180, 190 (11th Cir. 2005) ("[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."). Plaintiffs are irreparably harmed by Defendants' violations of section 605 and have no adequate legal remedy for two reasons.

*First*, Plaintiffs lose revenues and market share to an extent that cannot be fully determined. (McMonnies Decl. ¶ 16.) Defendants assist customers in receiving DISH Programming without purchasing the requisite subscription and corresponding receiving equipment from Plaintiffs. (*Id.*) Quantifying Plaintiffs' loss that results from Defendants' misconduct is impractical as the number of Defendants' customers that received DISH Programming without authorization, and would have otherwise properly subscribed through DISH, is not easily determined. (*Id.*) Absent an injunction, there is nothing to stop Defendants from continuing to attract customers through their unauthorized retransmission of DISH Programming. Thus, the harm resulting from Defendants' Rebroadcasting Scheme is irreparable and cannot be completely corrected by an award of monetary damages. *See Ward*, 2010 WL 11507693, at *7 (finding "distribution of piracy software caused substantial and unquantifiable harm in that [it] enabled an untold number of end-users" to unlawfully access DISH programming, and "Plaintiffs do not have adequate remedy to prevent damages they would suffer by further infringement"); *see also Jaguar Imports, LLC v. Phoenix Glob. Ventures, Inc.*, No. 6:12-cv-1486-Orl-31KRS, 2013 WL 3491160, at *3 (M.D. Fla. July 2, 2013) (finding irreparable harm

and lack of adequate remedy at law based in part upon "los[t] market share and access to potential customers," which harm would likely continue to be inflicted absent injunctive relief).

*Second*, piracy harms Plaintiffs' business reputations and goodwill. (McMonnies Decl. ¶ 17.) Plaintiffs' reputations are built on and depend on delivering DISH Programming to authorized subscribers in a secure manner. (*Id.*) Defendants, by assisting their customers in receiving DISH Programming without authorization, harm Plaintiffs' reputations and interfere with the contractual and prospective business relationships of Plaintiffs, including relationships with channel providers that license their programming to DISH and customers for NagraStar's security technology. (*Id.*) Calculating Plaintiffs' reputational harm and lost sales caused by Defendants' piracy is inherently difficult, if not impossible. (*Id.*) Defendants are free to continue with their infringing conduct that damages Plaintiffs' reputations and goodwill if not enjoined. For this additional reason, Plaintiffs are irreparably harmed and the remedies available at law, such as money damages, are inadequate to compensate for that injury. *See DISH Network L.L.C. v. Bauder*, No. 6:14-cv-1443-Orl-31DAB, 2015 WL 1508419, at *9 (M.D. Fla. Apr. 1, 2015) (finding irreparable harm based on damage to Plaintiffs' reputations and goodwill resulting from piracy, and there was no adequate legal remedy because "money damages … are inadequate to prevent future piracy without injunctive relief"); *DISH Network L.L.C. v. Singh*, No. 6:14-cv-1442-Orl-40TBS, 2015 WL 1827444, at *4 (M.D. Fla. Apr. 21, 2015) (same).

    **2.   The Balance Of Hardships And Public Interest Favor An Injunction.**

Plaintiffs will be irreparably harmed without an injunction for the reasons stated above. In contrast, an injunction will only cause Defendants to cease profiting from their participation in the Rebroadcasting Scheme through their sale of Device Codes, which should not be given any weight in this balancing of hardships. *See Bauder*, 2015 WL 1508419, at *9; *Singh*, 2015 WL 1827444,

at *4; *see also Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:08-CV-1893-T-35MAP, 2013 WL 12164676, at *3 (M.D. Fla. May 9, 2013) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."), *modified*, 2013 WL 12161867 (M.D. Fla. Nov. 12, 2013). Accordingly, the balance of hardships tips decidedly in favor of granting a permanent injunction.

Likewise, an injunction will serve the public interest by "aiding the enforcement of federal law." *Bauder*, 2015 WL 1508419, at *9; *Singh*, 2015 WL 1827444, at *4; *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287-88 (2d Cir. 2012) (finding public interest is not disserved by enjoining unauthorized streaming of television programming, as public could still access that programming through lawful services). The requirements for a permanent injunction are therefore satisfied.

### III.    CONCLUSION

The Court should grant Plaintiffs' motion for default judgment and order as follows:

1. Defendants are liable on Counts I and II of Plaintiffs' complaint alleging violations of 47 U.S.C. §§ 605(a) and 605(e)(4);

2. Plaintiffs are awarded $3,805,000 in statutory damages against Defendants, jointly and severally, for Defendants' violations of section 605(e)(4);

3. Defendants' violations of section 605(a) and section 605(e)(4) warrant a permanent injunction barring Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with any of them that receives actual notice of the order, from:

    a. Conducting the Rebroadcasting Scheme, or otherwise receiving or assisting others in receiving DISH's satellite communications of television programming or the content of such communications without authorization from DISH;

     b.  Selling or distributing Device Codes, or any other device or equipment that is intended for receiving or assisting others in receiving DISH's satellite communications of television programming or the content of such communications;

Plaintiffs' requested damages and permanent injunction are justified for the reasons stated above, and do not go beyond the relief sought in the complaint. (*See supra* Parts II.B.C.; Compl. Prayer for Relief §§ A, E.)

Dated: January 30, 2020

                Respectfully submitted,

                /s/ James A Boatman, Jr.
                James A. Boatman, Jr.
                Florida Bar No. 0130184
                THE BOATMAN LAW FIRM PA
                3021 Airport-Pulling Road North, Suite 202
                Naples, Florida 34105
                Telephone:  (239) 330-1494
                Email:  jab@boatman-law.com

                Attorney for Plaintiffs DISH Network L.L.C.
                and NagraStar LLC

## CERTIFICATE OF SERVICE

I certify that on January 30, 2020, I electronically filed Plaintiffs' Motion for Default Judgment and its supporting exhibits with the Court using the CM/ECF system.  I sent a copy of the documents by United States mail, return receipt requested, on that same day to the following:

Donna Fogle
5633 Lexington Drive
Parrish, Florida 34219

One Box TV, LLC
c/o Robert Shindler
2429 Manatee Avenue E, #2
Bradenton, Florida 34208

                                        /s/ James A Boatman, Jr.
                                        James A. Boatman, Jr.